**J. Albert WARFORD and Joanne Stevens, Appellants,**

v.

**Frank BEARD and Allyne Beard, Appellees.**

**No. 07–81–0181–CV.**

Court of Appeals of Texas, Amarillo.

May 25, 1983.

Nelson & Nelson, Jack O. Nelson, Jr., Lubbock, Goodsill, Anderson & Quinn, Honolulu, Hawaii, for appellants.

O'Shea & Hall, W. Richard Forcum, Turner & Jones, Tommy J. Turner, Lubbock, for appellees.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

COUNTISS, Justice.

This is an appeal from an order denying a Rule 215a[1] motion to require two deponents to answer certain questions and produce certain documents. The trial court concluded the deponents were entitled to rely on their privilege against self-incrimination in refusing to answer the questions or produce the documents. We reverse and remand.

The case before us is part of the continuing controversy outlined in *Warford v. Childers,* 642 S.W.2d 63 (Tex.App.—Amarillo 1982, no writ). Appellants J. Albert Warford and JoAnne Stevens are plaintiffs in a civil suit against various persons in the State of Hawaii. In the Hawaii suit, Mr. Warford and Mrs. Stevens seek several million dollars in damages and other relief from the defendants because of the murder of Mr. Warford's son, Paul Roger Warford, and Mrs. Steven's son, David Blue. Warford and Stevens contend the named defendants in the Hawaii suit, and various unnamed persons, engaged in a conspiracy to murder their sons. During discovery proceedings, the Hawaii trial court issued a commission to take the deposition of appellees Frank Beard and Allyne Beard, who were alleged to reside in or near Lubbock, Texas. The Beards are not parties to the

Hawaii suit. Pursuant to the commission and in accordance with Tex.Rev.Civ.Stat. Ann. art. 3769a (Vernon Supp.1982),[2] the Beards were ordered to appear for oral deposition and to produce various documents. The Beards appeared, with counsel, but refused to answer most of the questions asked of them, and refused to produce the subpoenaed documents, asserting the privilege against self-incrimination under the U.S., Texas and Hawaii constitutions. U.S. Const. amend. V; Tex. Const. art. 1, § 10.

Warford and Stevens then filed a Rule 215a motion in a Lubbock County District Court to compel the Beards to answer the questions and produce the documents. After hearing arguments of counsel and reviewing the pleadings, document list, questions, briefs and stipulations, the trial court denied any relief to Warford and Stevens. In its conclusions of law, the court stated that the privilege against self-incrimination may be asserted in a civil suit, that any doubt about the propriety of invoking the privilege should be resolved in its favor and that "it is not perfectly clear to the Court from a careful consideration of all the circumstances of the case in Hawaii that Frank Beard and Allyne Beard, and each of them, are mistaken and the answers to the questions propounded to them cannot possibly have a tendency to incriminate them."

Warford and Stevens challenge the trial court's order by seven points of error, argued collectively.[3] By six of the points, they question the applicability of the privilege against self-incrimination to the questions and documents and, by the remaining

---

1. Tex.R.Civ.Pro. 215a. All rules cited are from the Texas Rules of Civil Procedure.

2. Tex.Rev.Civ.Stat.Ann. art. 3769a (Vernon Supp.1982) states:

   Whenever any mandate, writ or commission is issued out of any court of record in any other state, territory, district or foreign jurisdiction, and it is required to take the testimony of a witness or witnesses in this state, either on written interrogatories or by oral deposition, the witness may be compelled to appear and testify in the same manner and by the same process and proceeding as may

be employed for the purpose of taking testimony in proceedings pending in this State.

3. Rulings on pre-trial discovery motions usually cannot be challenged by an appeal until a final judgment is entered in the case to which the discovery is related. However, in *Warford v. Childers,* 642 S.W.2d 63 (Tex.App.—Amarillo 1982, no writ), we concluded we have jurisdiction of an appeal from an order denying discovery when the primary litigation is in another jurisdiction and only Rule 215a relief is sought in a Texas court. We adhere to that ruling in this case.

point, challenge the procedure followed by the trial court.

We will first determine whether the privilege shields the Beards from the deposition questions.[4] *In Ex parte Butler*, 522 S.W.2d 196 (Tex.1975) our Supreme Court outlined the framework within which to analyze a claim of the privilege against self-incrimination by a witness in a civil case. Although, as the Court recognized, the civil nature of the proceeding "does not interdict the witness's privilege", the civil witness, unlike the defendant in a criminal case, is not the exclusive arbiter of his right to exercise the privilege. As explained by the Court, when the privilege is claimed the judge must determine the validity of the claim:

> The judge is entitled to determine whether the refusal to answer appears to be based upon the good faith of the witness and is justifiable under all of the circumstances. *Ex parte Park*, 37 Tex.Cr.R. 590, 40 S.W. 300 (1897); *Farmer v. State*, 491 S.W.2d 133 (Tex.Cr.App.1973). The inquiry by the court is necessarily limited, because the witness need only show that an answer to the question is likely to be hazardous to him; the witness cannot be required to disclose the very information which the privilege protects.

The Court then stated the test to be applied when the judge is making the determination:

> Before the judge may compel the witness to answer, he must be " 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency' to incriminate." *Hoffman v. United States*,

341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

Thus, each question for which the privilege is claimed must be studied and the court must forecast whether an answer to the question could tend to incriminate the witness in a crime. In some instances, the ramifications of answering will be apparent; in others, not so apparent. It is the latter situation that presents a difficult problem, because the witness must reveal enough to demonstrate hazard without revealing the very information he or she seeks to conceal. *See Farmer v. State*, 491 S.W.2d 133, 135 (Tex.Cr.App.1973). When the witness has given the reasons for refusing to answer, the judge must then evaluate those reasons by the high standard of review stated above.

■ The questions asked of, but unanswered by, the Beards fall into four general categories: (1) personal questions inquiring about matters such as the Beards' family backgrounds, prior places of residence, social security numbers and bank accounts; (2) questions exploring the Beards' acquaintance or dealings with the various persons who are defendants in the Hawaii suit; (3) questions about the Beards' presence in or other contacts with the State of Hawaii and (4) questions concerning the Beards' ability to identify or explain various exhibits shown to them. In the trial court and in this Court, the Beards give the same reason for refusing to answer the questions. Pointing out that the Hawaii civil suit is based on the theory that numerous persons conspired to commit two murders, they say that answers to questions about any of the foregoing matters could have a tendency to implicate them in a criminal conspiracy as defined by Texas law.[5]

---

4. The Beards invoked the privilege against self-incrimination under the U.S., Texas and Hawaii constitutions. The scope of the U.S. and Texas privileges are the same, *Meyer v. Tunks*, 360 S.W.2d 518, 521 (Tex.1962), and we will rely on authorities from both jurisdictions in resolving the issues in this case. Because the Hawaii provision was not proven, we presume it is the same as the Texas provision. *Lincoln Bank and Trust Co. v. Webb*, 620 S.W.2d 174 (Tex. Civ.App.—San Antonio 1981, no writ); see

generally 1 Ray, Law of Evidence, §§ 460–486 (Texas Practice 3d ed. 1980).

5. Section 15.02 of the Texas Penal Code (Vernon 1974) defines a criminal conspiracy as follows:

> (a) A person commits criminal conspiracy if, with intent that a felony be committed:
> (1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and

We agree that the Beards can claim the privilege on all questions under category (2) above, without showing more than is in the record before us. A conspiracy under Tex. Penal Code Ann. § 15.02 (Vernon 1974) is a loosely defined, broad based crime that is dependent upon proof of interaction among various people. Thus, the questions inquiring about the relationship between the Beards and the Hawaii defendants could tend to establish one of its elements. By linking the Hawaii conspiracy theory to the Texas conspiracy law, the Beards made the vital connection required by *Ex parte Butler.*

■ We do not agree, however, that all questions in the remaining categories can, without further justification, remain unanswered. The personal questions, the inquiries about other contacts with, or presence in, Hawaii and the questions about various exhibits do not, on their face, call for answers that would tend to incriminate the Beards in a conspiracy. Before the Beards can claim the privilege on those questions, they must do more to illustrate the hazard then they have done on the record before us.

■ We must next decide whether the privilege bars production of various documents believed to be in the Beards' possession. We do not find a modern Texas case fully analyzing the application of the privilege against self-incrimination to subpoena documents, under comparable facts. However, as recognized long ago in *Boyd v. U.S.*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the basic principles are the same as with testimony: "[T]he seizure of a man's private books and papers to be used in evidence against him" is not "substantially different from compelling him to be a witness against himself ...." *Id.* at 633, 6 S.Ct. at 533. *Accord: Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Ex parte Wilson,* 39 Tex.Crim.R. 630, 47 S.W. 996 (1898). The issue is more complex than when dealing with potentially incriminating testimony

because many documents may be incriminating but not testimonial in nature and the "rule that the fifth amendment does not protect against compulsion of nontestimonial acts is almost as old as *Boyd* itself." *United States v. Davis,* 636 F.2d 1028, 1042 (5th Cir.1981). In *Davis,* after a detailed and accurate analysis of many cases that have been written on the problem, the Court stated the test to be applied, as follows:

> [A]ny incriminating papers in the actual or constructive possession of an individual, which he holds in his individual capacity, rather than in a representative capacity, and which he himself wrote or which were written under his immediate supervision, are absolutely protected by the *Boyd* principle from production by subpoena or equivalent process, regardless of whether they are business-related or more inherently personal in content.

*Id.* at 1043 (footnotes omitted).

■ Thus, in order to be privileged, the incriminating documents must have a strong personal connection to the witness, *i.e.,* documents "which he himself wrote or which were written under his immediate supervision ...." It follows that documents belonging to or prepared by others are not protected, even if they contain incriminating matters. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); 1 Ray, Law of Evidence § 471 (Texas Practice 3d ed. 1980).

■ In this case, Warford and Stevens sought several general categories of documents: (1) documents belonging to the various defendants in the Hawaii suit; (2) documents prepared by others, such as telephone and bank records and charge card receipts and (3) miscellaneous other documents, that may or may not have been prepared personally by the Beards. Under the authorities cited above, documents in the first two categories are not privileged and the Beards cannot refuse to produce them because of the fear of self-incrimination. However,

---

(2) he or one or more of them performs an overt act in pursuance of the agreement.

(b) An agreement constituting a conspiracy may be inferred from acts of the parties.

documents in the third category must be tested by the principles stated above, under the review standard of *Ex parte Butler.* If they were not written by the Beards or under their immediate supervision they are not protected from disclosure. Conversely, if they were written by the Beards or under their immediate supervision, they are protected, unless it is perfectly clear that the documents are not incriminating.

Finally, we must decide whether an extraordinary procedure should be followed by the trial court in making the determinations required by our holdings. Warford and Stevens suggest, by their fifth point of error, that the court should resolve the matters *in camera.* Although there is authority for the United States courts to follow that procedure, *U.S. v. Goodwin,* 625 F.2d 693 (11th Cir.1980), we find no authority requiring Texas courts to do so. Consistent with the foregoing discussion, the trial court should conduct a hearing at which the Beards will be permitted to present item by item reasons for refusing to answer the questions, or produce the documents. The trial court can then determine the validity of each claim of privilege. However, whether the court does so in open court or *in camera* is within the court's discretion.

We are well aware that the Beards and the trial court must walk a narrow line. Perhaps the situation was best summarized by Judge Learned Hand, writing for the United States Court of Appeals for the Second Circuit, in *United States v. Weisman,* 111 F.2d 260, 262–263 (2nd Cir.1940):

> Obviously a witness may not be compelled to do more than show that the answer is likely to be dangerous to him, else he will be forced to disclose those very facts which the privilege protects. Logically, indeed, he is boxed in a paradox, for he must prove the criminatory character of what it is his privilege to suppress just because it is criminatory. The only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it

permits the suppression of competent evidence, nothing better is available.

\*   \*   \*   \*   \*   \*

Indeed, perhaps in the end we should say no more than that the chase must not get too hot; or the scent, too fresh. Nevertheless, the Beards must justify their claims of privilege and, except in the single area discussed above, have not done so. Points of error one through seven are sustained, except that portion of point five pertaining to an *in camera* hearing.

The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.