**Cliff SINCLAIR, Appellant,**

v.

**The SAVINGS AND LOAN COMMISSIONER OF TEXAS, L. L. Bowman III, Appellee.**

**No. 05–84–00974–CV.**

Court of Appeals of Texas, Dallas.

June 24, 1985.

Rehearing Denied July 25, 1985.

Bill Boyd, Boyd, Veigel, Gay & McCall, McKinney, for appellant.

Jim Mattox, Atty. Gen., David R. Richards, Executive Asst. Atty. Gen., Deborah Herzberg Loomis and Bradley Seals, Asst. Attys. Gen., Austin, for appellee.

Before CARVER, ALLEN and HOWELL, JJ.

## ON MOTION FOR REHEARING

ALLEN, Justice.

Appellant and appellee have both filed motions for rehearing. We overrule both motions, but, for the purpose of clarification, we withdraw our former opinion in this case of April 9, 1985, and substitute the following as the opinion of this court.

Cliff Sinclair appeals from an order enforcing a subpoena that the Texas Savings and Loan Commissioner, L. L. Bowman III, had issued in connection with the Commissioner's investigation of certain Texas savings and loan associations. Sinclair raises twenty-four points of error, contending for the most part that the subpoena should be quashed or further modified on fourth and fifth amendment grounds. The Commissioner in response has asserted twelve cross-points which basically complain of the trial court's modification of the Commissioner's subpoena. Although we conclude that Sinclair's points of error warrant discussion, our disposition of this appeal is not founded on any of them. Rather, we decide this appeal on the basis of two of the commissioner's cross-points. We agree with the Commissioner's first cross-point that the trial court erred in partially quashing the subpoena because there was insufficient evidence that Sinclair's fifth amendment rights would be violated. We also agree with the Commissioner's seventh cross-point, the gist of which is that the trial court erred in not ordering Sinclair to appear before the Commissioner and submit to the Commissioner's questioning. Accordingly, we reverse and remand with instructions.

The subpoena that is the heart of this controversy reads as follows:

At the instance of the Savings and Loan Commissioner of the State of Texas you are hereby required to appear before the Savings and Loan Commissioner of the State of Texas, or his authorized agent, at:

Texas Savings and Loan Department
North Texas Region Office
1008 American Bank Building
800 West Airport Freeway

in the City of Irving, Texas on the 30th day of November, 1983, at 9:00 a.m. then and there to answer such questions as may be propounded to you by the Savings and Loan Commissioner of Texas, or his authorized agent, as a part of an examination by the Commissioner to determine the financial condition of state savings and loan association, and that you produce to the Savings and Loan Commissioner, or his authorized agent, for examination and/or reproduction (including photostating or photocopying), at such time and place, the following:

See Exhibit A.

### EXHIBIT A

1. All books, records, notes, memoranda, or other documents, including, but not limited to, journals, ledgers, promissory notes, deeds, deeds of trust, contracts, closing statements, seller's statements, buyer's statements, title insurance policies, appraisals, vouchers, checks, receipts, disbursement records, wire transfer records, bank statements and records, memoranda, letters, telegrams, correspondence, or other documents which relate to any involvement by you or any person or company owned or controlled by you in the purchase, acquisition, sale, or financing of real estate in transactions involving loans made on real estate during calendar years 1982 and 1983 by one or more of the following savings and loan associations: Empire Savings and Loan Association of Mesquite; Bell Savings Association of Belton, First Savings and Loan Association of Burkburnett; Investex Savings Association of Tyler; State Savings and Loan Association of Lubbock.

Sinclair did not appear in response to the subpoena. The Commissioner, through the Attorney General of Texas, filed an application for enforcement of the subpoena. Sinclair answered with a motion to quash the subpoena. Sinclair attached to the motion the following affidavit:

My name is Clifford Ray Sinclair. I have been advised that the United States Attorney for the Northern District of Texas, the Federal Bureau of Investigation and the Dallas County District Attorney's Office are currently investigating Danny Faulkner, Jim Toler, Spencer Blaine, and several other people including myself in regards to all transactions concerning and relations to several savings and loan associations including but not limited to the following: Empire Savings and Loan Association of Mesquite; Bell Savings Association of Belton; First Savings and Loan Association of Burkburnett; Investex Savings Association of Tyler; State Savings and Loan Association of Lubbock.

I am aware that the purpose of this investigation is to determine whether or not criminal prosecution will be initiated against those being investigated.

I am aware that the Texas Savings and Loan Department is in communication with the United States Attorney, the Dallas County District Attorney, and the Federal Bureau of Investigation, and any information or documents which I provide pursuant to the subpoena duces tecum issued on November 10, 1983, by the Commissioner of the Texas Savings and Loan Department could be used by the United States Attorney, the Dallas County District Attorney, and the Federal Bureau of Investigation to aid them in their investigation and their building of a criminal case against me.

I therefore upon the advice of my attorneys respectfully decline to produce the documents called for by the subpoena

duces tecum at this time and assert my rights and privileges under the fourth and fifth amendments to the Constitution of the United States and Article I, Sections 9 and 10 of the Texas Constitution.

Sinclair did not personally appear at the hearing on enforcement of the subpoena, but his attorneys appeared in his stead. During the course of the proceeding, the trial judge observed:

It's my understanding, and taking judicial notice of my pleadings before me, we have Mr. Clifford Ray Sinclair who is invoking the Fourth and Fifth Amendments to the. Constitution of the United States and is declining to produce the documents called for by the subpoena duces tecum that is in evidence, and in order to protect these constitutional rights the Court necessarily has to determine how to partially enforce the subpoena, and I'll allow the Texas Savings and Loan Commissioner to obtain whatever documents that are not privileged. For that reason, we have to consider other things besides the affidavit, other evidence.

The court heard testimony from only one witness, Russell R. Oliver, an attorney who worked for the Texas Savings and Loan Department. Oliver testified that the Savings and Loan Department was investigating the five savings and loans named in the subpoena and Sinclair in connection with loans for real estate transactions. He confirmed the allegation in Sinclair's affidavit that the Department had communicated with the United States Attorney, the Dallas County District Attorney, and the Federal Bureau of Investigation about the Department's investigation. He acknowledged that these agencies were conducting a criminal investigation into the same transactions which were the subject of the Department's investigation. Oliver also acknowledged that Sinclair's name had come up in the Department's communications with these various criminal investigative agencies, since Sinclair was apparently involved in the investigated transactions. Finally, Oliver testified that the Department

had turned over the documents it had acquired in its investigation to the Dallas County District Attorney in response to a Dallas grand jury subpoena.

After hearing this evidence, the trial court entered the following order:

[T]he Court, after hearing the evidence and considering the pleadings on file herein and argument of counsel, was of the opinion that the Application should in part, be granted and modified and that the First Amended Motion to Quash should, in part, be granted since the Court has taken judicial notice of the affidavit of Clifford Ray Sinclair on file herein invoking his rights under the Fourth and Fifth Amendments of the Constitution of the United States.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Cliff Sinclair is hereby ordered to appear in the 68th Judicial District Court, 6th Floor, Dallas County Courthouse, Dallas, Texas, on May 7, 1984 at 9:00 A.M., and deliver to L. L. Bowman III, Savings and Loan Commissioner of the State of Texas (or his designated representative), the following:

(a) all documents relating to the financing of real estate with the savings and loan associations described in the Subpoena Duces Tecum (a copy of which is attached hereto and incorporated herein) and originating between January 1, 1979 and the date of this order, which are in the actual or constructive possession of Cliff Sinclair and described in the Subpoena Duces Tecum, (a copy of which is attached hereto) and which belongs to or is prepared by other parties, entities or corporations under Cliff Sinclair's control, but which are either:

(1) held by Cliff Sinclair in a representative capacity, or

(2) under the control of Cliff Sinclair after the right of control has been previously relinquished by the owner of such document.

(b) all documents relating to the financing of real estate with the savings

and loan associations described in the Subpoena Duces Tecum (a copy of which is attached hereto and originating between January 1, 1979 and the date of this order, which are in the actual or constructive possession of Cliff Sinclair and described in the Subpoena Duces Tecum (a copy of which is attached hereto) and which are records required to be maintained by the Texas Savings and Loan Act, TEX.REV.CIV. STAT.ANN. art. 852 and rules and regulations promulgated thereunder, for any business either:

(1) owned by Cliff Sinclair, or

(2) in which Cliff Sinclair possessed an ownership interest.

(c) a list, which is sworn to under oath by Cliff Sinclair, specifically identifying documents specified in this order which Cliff Sinclair refuses to produce and the reason for such refusal.

IT IS FURTHER ORDERED THAT the First Amended Motion to Quash, filed herein by Cliff Sinclair, be and is hereby granted, in part, and that those portions of the Subpoena Duces Tecum (a copy of which is attached hereto and incorporated herein) which demand the production of personal documents and records of Cliff Sinclair not required to be maintained by the Texas Savings and Loan Act, and the rules and regulations promulgated thereunder, are hereby quashed.

The Commissioner's subpoena essentially demanded three things: (a) that Sinclair appear before the Commissioner so that the Commissioner could question him, (b) that Sinclair answer the questions propounded, and (c) that Sinclair turn over to the Commissioner the specified documents. The trial court's order does not address the issue of what questions Sinclair was required to answer, as of course it could not have, inasmuch as the Commissioner had not yet asked Sinclair any questions. The trial court's order does partially quash the subpoena and modify it with respect to its demand for documents. Its modifications are largely, although not exclusively, aimed

at protecting Sinclair's fifth amendment privilege against self-incrimination. In particular, the order limits the scope of the subpoena to documents prepared by parties other than Sinclair and also all documents prepared by any party which were records required to be kept under the Texas Savings and Loan Act. We agree with the Commissioner's contention in his first cross-point that there was insufficient evidence to warrant the modifications designed to protect Sinclair's fifth amendment rights. Sinclair did not, at any stage, properly assert his fifth amendment privilege against self-incrimination. As a result, the trial court did not have a sufficient record to support its order partially quashing and modifying the subpoena.

■■ The proper way for a person to assert a fifth amendment privilege in response to an administrative subpoena is to appear before the summoning agent and personally claim the privilege on a question-by-question and document-by-document basis. *United States v. Davis,* 636 F.2d 1028, 1038 (5th Cir.1981), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *see Landy v. United States,* 283 F.2d 303, 304 (5th Cir.1960), *cert. denied,* 365 U.S. 845, 81 S.Ct. 805, 5 L.Ed.2d 810 (1961), quoted with approval in *Meyer v. Tunks,* 360 S.W.2d 518, 523 (Tex.1962). A blanket invocation of the privilege is not proper. *Securities and Exchange Commission v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 668 (5th Cir.1981); *see Carter v. Irvine,* 77 S.W.2d 247, 250 (Tex.Civ.App.—Waco 1934, no writ). It is possible to assert the privilege with respect to documents for the first time in enforcement proceedings, *Davis,* 636 F.2d at 1039, but to do so, the respondent must appear at the enforcement hearing with his documents, personally assert his privilege with respect to each document, submit the documents to the court for inspection and answer questions the court might have about why the documents are privileged. *See United States v. Johnson,* 465 F.2d 793, 796 (5th Cir.1972); *United States v. Roundtree,* 420 F.2d 845, 852 (5th Cir.

1970); *also Warford v. Beard,* 653 S.W.2d 908, 911, 913 (Tex.App.—Amarillo 1983, no writ).

■ If the respondent does not appear before the summoning agent and let the summoning agent ask him his questions, the trial court at an enforcement hearing has no record of what questions the respondent means to resist on the ground of privilege. If the respondent does not submit his documents to the trial court for inspection and answer the court's questions about why those documents might be privileged, the court has no record on the basis of which it can decide whether the documents are privileged. *See United States v. Malnik,* 489 F.2d 682, 685–86 (5th Cir. 1974), *cert. denied,* 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974); *also Warford,* 653 S.W.2d at 911, 913. We therefore conclude that since Sinclair failed to assert his fifth amendment privilege properly, the record was inadequate to support the trial court's action in partially quashing the subpoena and modifying it to protect Sinclair's fifth amendment privilege. There was thus insufficient evidence to support the portions of the trial court's order which partially quashed the subpoena and modified it to protect Sinclair's fifth amendment privilege.[1] We sustain the Commissioner's first cross-point.

■ The Commissioner's seventh cross-point contends, in essence, that the trial court erred in not ordering Sinclair to appear before the Commissioner so that the Commissioner could question him. Given a proper assertion of the privilege, Sinclair may possibly have some fifth amendment privilege claim that would allow him to refuse to answer particular questions or produce certain documents. He has, however, no fifth amendment right to refuse to appear in response to the subpoena and submit to the Commissioner's questioning. *Landy v. United States,* 283 F.2d at 304. The trial court failed to command Sinclair to appear before the Commissioner and

submit to questioning and, indeed, implied in its conclusion of law 21 that the Commissioner needed to bring yet another action to compel Sinclair to appear for questioning. There is nothing in the record and no legal principle that supports this conclusion of law or justifies the trial court's failure, in the present action, to order Sinclair to appear and submit to the Commissioner's questioning. We sustain the Commissioner's seventh cross-point.

The Commissioner also contends in his eleventh cross-point that the trial court erred in only ordering Sinclair to produce documents related to financing of real estate in transactions involving the five savings and loans. The original subpoena called for production of documents related to "purchase, acquisition, sale or financing of real estate." The Commissioner does not cite any authority under this cross-point, hence we cannot sustain it. *Hatch v. Davis,* 621 S.W.2d 443, 447 (Tex.Civ.App.— Corpus Christi 1981, writ ref'd n.r.e.). However, in light of the fact that we are remanding this case, we note that there is nothing in the present record to warrant limiting the scope of the subpoena to documents related only to financing of real estate.

We now address Sinclair's points of error, since some of these points of error claim that the trial court erred in failing to quash the subpoena in its entirety, and since consideration of some of the other points of error will help guide the trial court on remand.

■ In his first point of error, Sinclair contends that TEX.REV.CIV.STAT.ANN. art. 852a, § 8.10 (Vernon Supp.1985) does not authorize the subpoena, since Sinclair is not an officer, agent or employee of a savings and loan association. Section 8.10, however, authorizes the Savings and Loan Commissioner to "summon witnesses and administer oaths or affirmations in examination of the directors, officers, agents, or

---

1. Given the inadequacy of the record, the evidence is insufficient regardless of whether the trial court could take judicial notice of the affidavit through which Sinclair attempted to assert his fifth amendment privilege.

employees of any such association, *or any other person* in relation to its affairs, transactions and condition, and may require the production of records, books, papers, contracts or other documents by court order, if not voluntarily produced." (emphasis added) This point of error seems clearly ill-founded.

In his second and third points of error, Sinclair contends that the trial court acted improperly in enlarging the scope of the subpoena. Sinclair alleges that the trial court enlarged the subpoena in four ways:

1. by enlarging the time frame of the documents to be produced from the years 1982 and 1983 (those sought in the subpoena) to include all documents from January 1, 1979, until the date of the court's order (April 24, 1984),

2. by enlarging the scope of the subpoena to include not only those documents in the actual possession of Sinclair, but those documents in the constructive possession of Sinclair, although such documents were not requested in the subpoena,

3. by enlarging the scope of the subpoena to include documents held by Sinclair in a representative capacity, although no such documents were requested in the subpoena, and

4. by adding a requirement that Sinclair produce a list, to be sworn to by Sinclair, specifically identifying any documents specified in the order which Sinclair refuses to produce and the reason for such refusal, although no such list was requested in the subpoena sought to be enforced.

Sinclair argues that these enlargements were not supported by the pleadings. The basis of this argument seems to be that since the Department only pleaded for enforcement of the subpoena as originally issued and did not plead for any enlargement, the court's order enforcing the enlarged subpoena is beyond the pleadings. Additionally, Sinclair insists that there is no evidence to support these enlargements

and that the enlargements were beyond the court's power.

The second and third alleged enlargements of the subpoena are actually not enlargements of the original subpoena at all, but instead are merely clarifications of that subpoena.

Sinclair does, however, have a legitimate complaint about the first and fourth alleged enlargements. The subpoena only demands documents relating to "transactions involving loans made on real estate during calendar years 1982 and 1983 ..." The record does not show that the Commissioner at any point requested in any way that the subpoena be modified to include all relevant documents generated since 1979. At oral argument, the Commissioner's attorney conceded that the Commissioner had not requested such a modification. We find no evidence in the record which would support such a modification. Hence, we conclude that the trial court should not have enlarged the subpoena's time frame.

The portion of the court's order which required Sinclair to deliver to the Commissioner a list of documents Sinclair refused to produce, along with the reasons for his refusal, is also a true enlargement of the original subpoena. The Commissioner did not plead for this enlargement. The trial court apparently made this enlargement in order to protect the Commissioner's interests in light of the other modifications it made to protect Sinclair's fifth amendment privilege. Since there was insufficient evidence to support the modifications designed to protect Sinclair's fifth amendment privilege, there was also insufficient evidence to support this derivative modification.

 Moreover, we note that if Sinclair had properly invoked his fifth amendment privilege, the court's order that Sinclair furnish the Commissioner a list of documents Sinclair refused to produce, along with the reasons for his refusal, could itself have violated that privilege.[2] By produc-

---

2. Sinclair, in his sixth point of error, claims that this portion of the order did violate his fifth amendment rights.

ing such a list, Sinclair would be admitting that certain documents exist, that he has them in his possession and that they are potentially incriminating. Compelled production of documents under subpoena can violate a person's fifth amendment privilege when the act of producing the documents would involve tacit assertions (for example, that the documents exist, that the person under subpoena possessed them, and that the person under subpoena believes that the documents are those described in the subpoena) and when these tacit assertions would have an incriminating effect. *United States v. Doe,* 465 U.S. 605, ——, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552, 560 (1984), *quoting Fisher v. United States,* 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39, 56 (1976). Compelling Sinclair to list the documents he refuses to produce and to say that those documents are potentially incriminating would force Sinclair to make the tacit assertions mentioned in *Doe,* along with the explicit assertion that he believes that the documents might incriminate him. If any of these assertions were to have an incriminating effect, the court's order would force Sinclair to incriminate himself. As a result of Sinclair's failure to assert his fifth amendment privilege properly, the record is insufficient for this court to decide whether these assertions would have an incriminating effect. On remand, if Sinclair properly asserts his privilege, the trial court must make this determination.

We now turn to the group of Sinclair's points of error which relate to Sinclair's complaint that the trial court's order violated his fifth amendment privilege against self-incrimination and the corresponding privilege in art. I, § 10 of the Texas Constitution. Sinclair contends, in points of error four and five, that the trial court erred in not quashing the subpoena in its entirety on fifth amendment grounds. We have already held that there was insufficient evidence to warrant the trial court's *modifications* of the subpoena which were designed to protect Sinclair's fifth amendment rights. *A fortiori,* the trial court did not have sufficient evidence before it to

warrant quashing the subpoena on fifth amendment grounds.

Sinclair accompanies his fifth amendment argument with a number of complaints about the trial court's failure to make certain findings of fact. Specifically, Sinclair complains that the trial court failed to find: (a) that the Texas Savings and Loan Department is cooperating with various criminal investigative agencies in their investigation of the five savings and loans, (b) that these various criminal investigative agencies are investigating Sinclair for possible criminal prosecution, (c) that the Department is aware that these agencies are investigating possible criminal conduct with respect to loan transactions involving Sinclair and the five savings and loans, (d) that the Department has furnished to the Dallas County District Attorney all records it has acquired in its investigation of the five savings and loans, (e) that the subpoena was designed, at least in part, to aid in the various criminal investigations of the five savings and loans, (f) that the records and papers requested in the subpoena are Sinclair's personal and private business papers, (g) that Sinclair is *not* required by law to keep as public records any of the subpoenaed papers or any records which involve Texas savings and loans, and (h) that the Department had *no* information leading it to believe that Sinclair is an officer, stockholder, director or owner of a savings and loan or is in the savings and loan business.

■■■ Sinclair did not make any bill of exceptions to the trial court's failure to make the additional findings of fact he requested. He has thus waived error. *Pinnacle Homes, Inc. v. R.C.L. Offshore Engineering Co.,* 640 S.W.2d 629, 631 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Hausler v. Hausler,* 636 S.W.2d 874, 876 (Tex.App.—Waco 1982, no writ); *Steppe v. O'Day,* 315 S.W.2d 599, 603–604 (Tex.Civ.App.—Waco 1958, writ ref'd n.r.e.). Moreover, the trial court's failure to make these findings of fact did not harm Sinclair. Since Sinclair did not properly invoke his fifth amendment privilege, he

would not have been entitled to demand that the subpoena be quashed or even modified on fifth amendment grounds, even if the trial court had made all these various findings of fact.

In order to guide the trial court on remand (should Sinclair, at the new proceedings, properly assert his fifth amendment privilege), and in light of some of the Commissioner's cross-points which we have not discussed, we deem it appropriate to make some observations about the nature and extent of the fifth amendment privilege with respect to subpoenaed documents. There appear to be two kinds of fifth amendment privileges regarding the production of such documents. First, the Fifth Circuit Court of Appeals, in *United States v. Davis*, 636 F.2d at 1043, relying on *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), has held that "any incriminating papers in the actual or constructive possession of an individual, which he holds in his individual capacity, rather than in a representative capacity, and which he himself wrote or which were written under his immediate supervision, are absolutely protected by the *Boyd* principle from production by subpoena or equivalent process ..." This might be called the "personal papers" privilege. Recently, the United States Supreme Court has limited this privilege to *non-business* papers. *United States v. Doe*, 465 U.S. at ———, 104 S.Ct. at 1240–1242, 79 L.Ed.2d at 557–560; *followed in, Jones v. Latham*, 671 S.W.2d 612, 613 (Tex.App.— Eastland 1984, writ ref'd n.r.e.). There is also a fifth amendment right, which we have already discussed, to refuse to produce documents when the act of production has incriminating testimonial aspects. *Doe*, 465 U.S. at ———, 104 S.Ct. at 1242–43, 79 L.E.2d at 560–61.

Thus, if on remand Sinclair properly invokes his fifth amendment privilege, and if, after examining the documents and making any necessary inquiries, the trial court concludes that the contents of the documents pose a real danger of incrimination to Sinclair, *see Steinbrecher v. Commissioner of Internal Revenue*, 712 F.2d 195, 197–98

(5th Cir.1983), then Sinclair would be entitled to fifth amendment protection with respect to the contents of personal, non-business papers that he wrote or had someone write for him under his immediate supervision. He would also be entitled to fifth amendment protection against the production of documents where there is a real hazard that the act of production itself would be testimonially incriminating.

■ In points of error 12–17, Sinclair contends that the subpoena violates his rights under the fourth amendment of the United States Constitution and art. I, § 9 of the Texas Constitution (which corresponds to the fourth amendment). The fourth amendment requirements for administrative subpoenas are these: (1) The agency must conduct its investigation pursuant to an authorized purpose and the subpoena must be relevant to that purpose. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208–209, 66 S.Ct. 494, 505–506, 90 L.Ed. 614, 629–30 (1946); *Securities and Exchange Commission v. OKC Corp.*, 474 F.Supp. 1031, 1034 (N.D.Tex. 1979). (2) The agency must follow the necessary statutory procedures. *OKC Corp.*, 474 F.Supp. at 1034. (3) The subpoena must describe the documents sought with adequate particularity. This means that the scope of its demand for documents must be adequate, but not excessive, for the purposes of the inquiry. *Oklahoma Press*, 327 U.S. at 209, 66 S.Ct. at 506, 90 L.Ed. at 630. (4) The subpoena must not unnecessarily or excessively seek information which the agency already possesses. *See United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112, 119 (1964) (first enunciating the "already possessed" requirement with respect to IRS summons); *United States v. Davis*, 636 F.2d at 1037–38 (interpreting "already possessed" rule as non-absolute requirement that subpoena's request for information already possessed not be unreasonable or oppressive); *OKC Corp.*, 474 F.Supp. at 1034 (applying "already possessed" rule to non-IRS administrative subpoena as fourth amendment requirement); *In re Grand*

*Jury Subpoenas Duces Tecum Addressed to Certain Executive Officers of M.G. Allen & Associates, Inc.,* 391 F.Supp. 991, 1001–1002 (D.R.I.1975) (implying that a grand jury subpoena may be quashed if repetitious and harassing [cited in *Davis* ]); *In re Columbia Broadcasting System,* 235 F.Supp. 684, 688–89 (S.D.N.Y.1964) (holding Department of Justice's Civil Investigative Demand *not* unreasonably duplicative under the fourth amendment [cited in *Davis* ]). (5) The respondent may show that the subpoena is unnecessarily burdensome to him. *OKC Corp.,* 474 F.Supp. at 1036.

▮▮▮ The subpoena here is relevant to an investigation conducted pursuant to an authorized purpose. There is no contention that the Department did not follow the necessary statutory procedures. The subpoena is adequately specific. In *OKC Corp.,* the federal district court for the Northern District of Texas held a subpoena valid which requested, among other things, "documents related to financial transactions between OKC and seven entities for a five-year period." *OKC Corp.,* 474 F.Supp. at 1035. Sinclair relies on *In re Grand Jury Proceedings,* 601 F.2d 162 (5th Cir. 1979), which quashed a grand jury subpoena, as authority for his argument that the present subpoena is overbroad. *Grand Jury* quotes the rule that the subpoena must describe the documents with adequate particularity, 601 F.2d at 168, but it is not clear whether this rule played any role in the court's decision to quash, which was based mainly on fifth amendment grounds. In any case, the subpoena request for documents did not specify the documents by tying them to transactions with particular entities, as did the subpoena in *OKC Corp.* and the subpoena in this case. The subpoena in *Grand Jury* is therefore broader than, and distinguishable from, the subpoena in *OKC Corp.* and the subpoena here. Thus, we conclude that the subpoena in the present case is not overbroad, since this subpoena specifies the documents by specific transactions with particular entities. Finally, Sinclair made no showing that producing the documents would be unnecessarily burdensome.

There is evidence, though, that the Department already has some of the documents it sought in the subpoena, since a Department attorney so testified. The Department attorney did not reveal which documents the Department had, because the assistant Attorney General representing the Department at the hearing successfully objected that these documents were confidential under TEX.REV.CIV.STAT.ANN. art. 852a § 11.18 (Vernon Supp.1985). It is thus impossible for this court to determine whether the subpoena as a whole is unreasonable for unnecessarily or excessively seeking information that the Department already possesses. It is also impossible for this court to limit the subpoena to relieve Sinclair from producing documents the Department already has.

▮▮▮ We therefore hold that on remand, if Sinclair makes a proper request, the trial judge should require the Department to furnish to the trial court a confidential list of documents the Department already has and a description of documents the Department is looking for, does not have, and suspects that Sinclair has. After making an *in camera* examination of this list and Sinclair's documents, the trial judge can determine whether the subpoena should be partially quashed or limited to protect Sinclair's fourth amendment rights. Article 852a, section 11.18 does not prohibit the Department from furnishing to the trial court such a list, since section 11.18 allows Department officials to disclose confidential information when "public duty" requires them "to report upon or to take official action regarding the affairs of the association so examined . . ." Of course, we do not mean to imply that the Department must furnish this list to Sinclair or that the trial court may allow Sinclair to see the list.

Sinclair also argues that the subpoena is invalid under the fourth amendment because it is designed to aid in the development of a criminal case against him. There is nothing in the record to show that the subpoena was issued for this purpose and

was, therefore, in bad faith. The record shows that the subpoena was issued pursuant to the Department's statutorily authorized investigation.

In addition to his major complaints based on the subpoena's alleged violation of the fourth and fifth amendments, Sinclair raises two final miscellaneous issues. First, in points of error eighteen and nineteen, Sinclair contends that the subpoena was invalid with respect to transactions with Empire Savings and Loan, because the Federal government had regulatory jurisdiction over Empire Savings and Loan, instead of the Texas Savings and Loan Department. The record does show that the federal government presently has supervision over Empire Savings and Loan. The Department could, however, be interested in loans Empire made because those loans might shed light on the affairs of other savings and loans which are under the Department's jurisdiction. Thus, the fact that Empire is not under the Department's jurisdiction would not necessarily mean that the Department could not inquire into its affairs. The Department failed, though, to get into evidence at the hearing testimony showing the nature of its interest in Empire. Thus, it did not establish that the subpoena's inquiry into transactions with Empire was statutorily authorized. Since we are remanding this case for a completely new hearing the Department will have another opportunity to present evidence establishing that statutory authorization.

■ Finally, Sinclair contends that the trial court erred in finding that Sinclair is a sole proprietor in the real estate business. Assuming that the trial court did err in finding that Sinclair was a sole proprietor in the real estate business, Sinclair has not shown how this (assumed) error harmed him. We therefore find no merit in Sinclair's twentieth point of error.

We now turn to the proper procedure on remand. First, since we have held that the trial court should have ordered Sinclair to appear before the Commissioner and submit to questioning, we instruct the trial court to order Sinclair to appear before the Commissioner or his representative and give the Commissioner or his representative the opportunity to ask questions. If Sinclair refuses to answer the questions on grounds of privilege, the trial court may later determine at the remand hearing whether Sinclair's assertion of privilege is justified. Thus, it would serve the interest of judicial economy for the Commissioner's questioning of Sinclair to be done in conjunction with the hearing on remand. This court is empowered and obliged to promote judicial economy. *See* TEX.R.CIV.P. 1, *Matlock v. Matlock*, 151 Tex. 308, 313–14, 249 S.W.2d 587, 590 (1952); *Elkins v. Auto Recovery Bureau*, 649 S.W.2d 73, 76–77 (Tex.App.—Dallas 1983, writ ref'd n.r.e.) (on rehearing); *Thompson v. Carter, Jones, Magee, Rudberg, Moss & Mayes*, 514 S.W.2d 131, 132 (Tex.Civ.App.—Dallas 1974, no writ) (*per* Guittard, J.). Hence, we instruct the trial court to order Sinclair to appear before the Commissioner or his representative for questioning in the 68th Judicial District Court, in the presence of the trial judge, with the 68th Judicial District court reporter present to record the proceedings. In the event Sinclair refuses to answer certain questions or produce certain documents, we further instruct the trial court to hold a hearing, immediately after the Commissioner's questioning of Sinclair, on Sinclair's refusal to answer or produce. The trial court, having heard the Commissioner's questions, and having before it a record of the questions, will then be in a position to decide whether Sinclair may refuse to answer any of the Commissioner's questions. We understand that this instruction to the trial court on remand is extraordinary, but, as the Corpus Christi Court of Civil Appeals said in *Alice National Bank v. Edwards*, 408 S.W.2d 307, 312 (Tex.Civ.App.—Corpus Christi 1966, no writ), in giving a similar instruction, "the present instance is extraordinary, and calls for extraordinary measures ..." We conclude that we must instruct the trial court as we have in order to effect a speedy resolution of this dispute and protect the legitimate interests of all parties.

At the hearing (if any) following the Commissioner's questioning, Sinclair must, if he wishes to assert his fifth amendment privilege with respect to documents, submit his documents to the trial court for inspection *in camera.* The Amarillo Court of Appeals, in *Warford v. Beard,* 653 S.W.2d at 913, held in an analogous case that the trial court need not conduct its inspection of and inquiry about assertedly privileged documents *in camera.* We cannot follow the Amarillo court's opinion in this respect. If the documents are privileged, and the trial judge in open court inspects them and asks the respondent questions about them, the respondent's assertion of privilege may well be in vain. The trial court's public inquiry about the documents may "let the cat out of the bag." *See Maness v. Meyers,* 419 U.S. 449, 462–63, 95 S.Ct. 584, 593, 42 L.Ed.2d 574, 585–86 (1975); *In re Katz,* 623 F.2d 122, 124–25, 127 (2nd Cir.1980). We conclude that to protect the respondent's asserted privilege, the trial court must inspect the documents *in camera. Compare Katz,* 623 F.2d at 127; *United States v. Johnson,* 465 F.2d at 795–96. If the potentially incriminating nature of the documents is not readily apparent to the court, it must question Sinclair and ascertain how the documents pose a danger of incrimination. *Steinbrecher v. Commissioner of Internal Revenue,* 712 F.2d at 198. This examination, too, must take place *in camera.* The trial court may then decide, in accordance with this opinion, which documents Sinclair must produce.

With these instructions, we therefore reverse and remand.

HOWELL, J., concurring in the result.

HOWELL, Justice, concurring.

I concur that the case must be reversed and remanded. I do not concur in the instructions to the trial court. Neither do I subscribe to all of the views expressed herein.