## In re AMERICAN HOME PRODUCTS CORPORATION, et al.

### No. 10–98–282–CV.

Court of Appeals of Texas,
Waco.

Oct. 2, 1998.

Beale Dean & Grant Liser, Brown, Herman, Dean, Wiseman, Liser & Hart, L.L.P., Fort Worth, Burgain G. Hayes, Kenneth Ferguson & Susan E. Burnett, Clark, Thomas & Winters, P.C., Austin, Paul E. Stallings & Marie R. Yeates, Vinson & Elkins, Houston, Brian P. Leitch, Arnold & Porter, Denver, Colorado, for Relators.

Michael P. McGarland, McDonald, Clay, Crow & McGarland, Fort Worth, David Sibley, Naman, Howell, Smith & Lee, P.C., Waco, Dan M. Bouldware, MacLean & Boulware, Cleburne, Sharon S. McCally, Houston, Jody Gilliam, Beard & Kultgen, Waco, Curtis Pritchard, Lummus, Hall, Pritchard & Baker, Cleburne, for Real Parties In Interest.

Honorable D. Wayne Bridewell, Presiding Judge, for Respondent.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

Real parties in interest Debbie Ledford and Sandra L. Moore (collectively "Plaintiffs") each filed suit against Relators American Home Products Corporation ("AHP") and Wyeth–Ayerst Laboratories Division of AHP ("Wyeth") for injuries allegedly sustained as a result of Plaintiffs' use of a prescribed appetite suppressant combination commonly referred to as "phen-fen."[1] Although the record is unclear as to the involvement of each of the Relators in the process, Relators collectively manufactured, distributed, and marketed these products before voluntarily withdrawing them from the market in September 1997.

Relators seek a writ of mandamus against Respondent, the Honorable Wayne Bridewell, Judge of the 249th Judicial District Court of Johnson County. They seek relief from Respondent's order that they produce to Plaintiffs certain documents relating to ongoing scientific studies.

### FACTUAL BACKGROUND

Ledford served AHP with a First Request for Production requesting among other things that AHP produce any documents in its possession:

> which reflect studies conducted after September 15, 1997 with regarding [sic] to FENFLURAMINE (Pondimin) and/or PHENTERMINE and/or DEXFENFLURAMINE (Redux); including protocol for those studies, any data gathered for those studies; and any correspondence to or from investigators relating to such studies.

Ledford's First Request for Production set forth numerous other requests for similar documents. Moore served AHP with a First Request for Production making similar requests.

AHP responded to these requests for production by providing Plaintiffs with the protocols for seven studies which began in late 1997 and early 1998 but made written objec-

---

1. Phentermine in combination with fenfluramine (marketed as Pondimin) or dexfenfluramine (marketed as Redux).

tions to the production of any further documents on several grounds including:

> this request seeks information pertinent to ongoing scientific studies and information pertinent to scientific studies that are not completed such as protocol, data and preliminary analysis.

Plaintiffs filed motions to compel AHP to produce any further documents in its possession related to the studies. AHP and Wyeth responded with a motion for a protective order in each cause. In support of these motions, AHP and Wyeth attached the affidavit of Dr. Joseph J. Pittelli, "the Executive Vice President for Clinical Research & Development at Wyeth Laboratories."

In this affidavit, Dr. Pittelli describes Wyeth as "the clinical research group of the defendants."[2] He explains that he and his colleagues at Wyeth formulated a series of studies to determine whether the use of phen-fen affects the cardiovascular system. Wyeth retained a number of contract research organizations (CRO's) to assist in conducting these studies.

> According to Pittelli, these CRO's:
> • train the investigators in the conduct of the study;
> • monitor patient enrollment;
> • monitor the investigators' record keeping;
> • collect data;
> • "break the blind" at the conclusion of the study to identify the test subjects who took the medication being studied and those in the control group who took a placebo;
> • tabulate the results; and
> • make the appropriate statistical analysis.

Until the "blind is broken," neither the investigators, the CRO's, nor the company which has retained the CRO's has "any way to know any preliminary results. All of these safeguards are maintained to ensure that the investigators in the field and the CRO itself are free of any improper influence from the company or any other person interested in the results of the study."

Pittelli asserts that premature disclosure of the information requested by Plaintiffs, "while the studies are still ongoing, *could* jeopardize their scientific integrity and *perhaps* result in their termination." (emphasis added). Pittelli more specifically states:

> The disclosure of the identity of the CRO's and clinical investigators involved in our currently on-going program assessing the possible association of fenfluramine or dexfenfluramine and cardiac abnormalities would subject them to depositions, document production or other discovery in either this or other lawsuits around the country, and hence would interfere with their conduct of the study, and certainly, delay their work. Indeed, it is my opinion that many investigators and CRO's would decline to continue in the current studies, and would certainly decline to enroll patients in the future, if they learned that their identities were going to be disclosed to litigants prior to acceptance of a study report, or that they might be forced to engage in premature document productions or depositions prior to the time they have completed their work.

At the hearing on Relators' motions for protective orders, Relators asserted primarily that disclosure of the requested documents would be unduly burdensome because it would interfere with on-going scientific studies and compromise the integrity of the results obtained from the studies. *See* Tex.R. Civ. P. 166b(4). Plaintiffs responded that because Relators have not asserted a specific privilege shielding the requested documents from disclosure, they must produce the documents. *See* Tex.R. Evid. 501(3).

The court granted Plaintiffs' request that Relators be required to disclose the requested documents. The court also granted Relators' request for a protective order. The court's order provides among other things:

> [Relators] shall produce to Plaintiffs by September 9, 1998, all documents in their possession with regard to ongoing research pertaining to Fenfluramine, Phentermine and/or Redux, which shall include but not

---

**2.** As best we can determine from the record, Wyeth is a "division" of AHP rather than a separate entity.

be limited to all protocols, budgets, reports, interim reports, communications or documents provided to or received from any person(s) or organization(s) performing such research, or documents which reflect communications to or from any such person(s) or organization(s);

[Relators] may redact such responsive documents only to the extent necessary to protect physician-patient identifying information;

Plaintiffs herein are prohibited from contacting any of the individual researchers involved in the ongoing studies being conducted on behalf of [Relators] nor can they notice the depositions thereof without further order of this Court;

Plaintiffs and their attorneys herein are prohibited from disseminating the information the subject of this Order with any person not a party or attorney in the above styled and referenced causes. All parties who review documents subject to the terms of this Order are hereby bound by the terms of this Order and subject themselves to the jurisdiction of this Court.

## APPLICABLE LAW

■ Relators can obtain mandamus relief only upon showing that the court committed a clear abuse of discretion and that they have no adequate legal remedy. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). To demonstrate a clear abuse of discretion, Relators must show "that the trial court could reasonably have reached only one decision." *Id.* at 840. Even if we would have decided the matter differently, we "cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id.*

When a party has sought protection from a particular discovery request, "the court may make any order in the interest of justice necessary to protect the movant from undue burden." TEX.R. CIV. P. 166b(5).

Specifically, the court's authority as to such orders extends to, although it is not necessarily limited by, any of the following:

a. ordering that requested discovery not be sought in whole or in part, or that the extent or subject matter of discovery

be limited, or that it not be undertaken at the time or place specified.

b. ordering that the discovery be undertaken only by such ' method or upon such terms and conditions or at the time and place directed by the court.

c. ordering that for good cause shown results of discovery be sealed or otherwise adequately protected, that its distribution be limited, or that its disclosure be restricted.

*Id.*

The Supreme Court has recognized that the otherwise "broad scope of discovery may be circumscribed ... by the legitimate interest of the opposing party in avoiding discovery based on a compelling, particularized interest in nondisclosure." *Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155, 160 (Tex.1993) (orig.proceeding). The Court held in *Eli Lilly* that because of "compelling public interest considerations manifested by" certain federal regulations related to the discovery request being considered, the plaintiffs were not entitled to discovery of the information sought. *Id.*

## APPLICATION

### COMPELLING PUBLIC INTEREST

■ Relators contend they have asserted such a compelling public interest in the present case. Specifically, they argue "the public has a compelling interest in the results of these studies and, therefore, has an aligned interest [with Relators] in the non-disclosure of this information prior to the studies' completion." They also assert that compliance with Respondent's order "would harm the public" "which ultimately stands to gain from knowledge of the final results." (quoting *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1269 (7th Cir.1982)).

We agree that the public indeed has a compelling interest in the integrity of the studies being conducted in this case. However, Relators' own conduct in the execution of the studies presents conflicting evidence on the extent to which they have sought to preserve this compelling interest. In addition, Pittelli equivocates in his affidavit on whether disclosure of the researchers' identi-

ties will in fact jeopardize the integrity of the studies or result in termination of the studies before completion.

Pittelli states that Wyeth retained a number of CRO's to conduct the studies. He asserts that an entity which retains CRO's in studies such as these should not have "any way to know any preliminary results" from the studies and that "the principal investigator—typically a leading academic physician"—will conduct the final "independent review of the study data" and present "the most important findings in a detailed report." However, Relators' counsel has provided this Court with copies of the protocols for the ongoing studies which state in pertinent part:

> The investigator agrees that Wyeth–Ayerst Laboratories, its employees, or agents, as well as representatives of the U.S. Food and Drug Administration, will have the right from time to time during the course of this study to audit and review pertinent medical records relating to this clinical trial.

This raises a question about whether the studies being conducted at Wyeth's behest are truly being conducted independently.

According to Pittelli, *the CRO's* "tabulate[ ] the results" and "make[ ] the appropriate statistical analysis." "[T]he scientific method *demands* detailed statistical analyses." (emphasis added). If Wyeth has some involvement in the studies beyond establishing the protocols and providing funding, then it has acted inconsistently with the "compelling public interest" it seeks to preserve.

Relators' counsel argued before the trial court that so far as he knew, the only interim documents relating to the studies which Relators possess are "status report[s]" in which a CRO "would report back: We now enrolled 100 patients. So we've now enrolled 150 patients. So we're at this stage of the process in the protocol. This is how far down the road we are." In addition, counsel in-

formed the court that Relators "have made reports to the FDA with respect to the administrative status of how the science is going and where the process is."[3]

Other than possibly revealing the identities of the CRO's, we fail to see how disclosure of these so-called "status reports" under the terms of Respondent's order will impact the interest Relators seek to protect. Moreover, Relators have cited no authority prohibiting disclosure of the reports made to the FDA.

## THE PROTECTIVE ORDER

Relators agree that Plaintiffs are ultimately entitled to discovery of the documents sought. However, they argue that disclosure of this information before completion of the studies poses an undue burden because it threatens the "compelling public interest" identified above. Thus, they seek protective orders delaying the timing of the disclosure. *See* TEX.R. CIV. P. 166b(5)(b) (protective order may require that discovery be undertaken "at the time or place specified" by the court).

Respondent granted Relators much of the relief they sought. He directed that the names of the patients and physicians participating in the studies be redacted. *Id.* 166b(5)(a). He prohibited Plaintiffs from contacting the researchers involved in the studies without prior permission of the court. *Id.* 166b(5)(c). He prohibited them from disseminating the information disclosed pursuant to his order to any person not a party to the two lawsuits before him. *Id.*[4]

Relators place much reliance on *Eli Lilly* to demonstrate that Respondent should have delayed disclosure of the information sought. In that case, the trial court ordered unrestricted disclosure of the identities of physicians who had reported possible adverse reactions to Prozac experienced by their patients. *Eli Lilly,* 850 S.W.2d at 157. In this case however, Respondent placed

---

**3.** The record is unclear on this issue, but Relators apparently have no objection to disclosing this interim information so long as they do not have to identity the CRO's.

**4.** Were we drafting the protective order, we might have ordered the redaction of the identities of the CRO's. We cannot say on this basis alone, however, that Respondent abused his dis-

cretion in promulgating restrictions on the manner in which Plaintiffs can obtain discovery of the information sought. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding) ("Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable.").

511

protective restrictions on the disclosure of the information sought. Thus, this case is distinguishable from *Eli Lilly*.

## CONCLUSION

Relators' own conduct in the execution of the studies presents a question about whether they have acted inconsistently with the compelling public interest they seek to preserve. In addition, their evidence does not clearly establish that disclosure of the researchers' identities will in fact jeopardize the integrity of the studies or result in termination of the studies before completion. Finally, Respondent's order places numerous restrictions on the disclosure of the information they seek to withhold.

For each of these reasons, we cannot say Relators have satisfied the onerous burden of demonstrating that Respondent "could reasonably have reached only one decision." *Walker*, 827 S.W.2d at 840. Thus, they have failed to establish a clear abuse of discretion. Accordingly, we deny Relators' petition for mandamus relief. Relators must comply with Respondent's order within ten days of the date this opinion issues.