**In re Kim VERBOIS and Steve Riggins.**

No. 10–99–363–CV.

Court of Appeals of Texas, Waco.

Feb. 23, 2000.

---

**4.** Upon written motion filed by the State, the trial court dismissed Count III.

Mary Lou Shipley, Waxahachie, for Relators.

Carol L. Bush, Waxahachie, for Attorney Ad Litem.

Bob Carroll, Waxahachie, for Respondent.

Joe Grubbs, Cynthia Hellstern, Asst. County & Dist. Atty., Waxahachie, for Real Party in Interest.

Before DAVIS, C.J., and VANCE and GRAY, JJ.

## OPINION

REX D. DAVIS, Chief Justice.

Relators Kim Verbois and Steve Riggins ask this Court to issue a writ of mandamus against Respondent, the Honorable Bob Carroll, Judge of the County Court at Law of Ellis County. Relators request that we order Respondent to vacate temporary orders he has entered in a suit affecting the parent-child relationship filed against them by the Department of Protective and Regulatory Services ("DPRS") which allegedly implicate their federal and state constitutional privileges against self-incrimination.

### BACKGROUND

On July 13, 1999, one of Verbois's and Riggins's eight-month-old twin daughters stopped breathing while at home with Riggins. Riggins summoned an ambulance which transported her to a hospital, where she died the next day. A medical examiner has ruled her death a homicide. DPRS took custody of the surviving twin, B.R., two days after her sister's death. Respondent appointed DPRS temporary managing conservator of B.R. on August 6. The parties represented at oral argument that the Ellis County District Attorney's Office has not commenced prosecution of the alleged homicide.

Respondent signed temporary orders on November 8 directing each of Relators to:

- release all past medical and mental health records to DPRS;
- sign a written release for all medical and mental health records;

- submit to a psychological evaluation by a psychologist to whom all parties agree; and
- submit to counseling if recommended by the psychologist.

Respondent's order prohibits the parties and their attorneys from releasing "to any attorneys, party or organization not directly involved in this action" any information gathered from the disclosed records, the psychological evaluation, or any counseling report. The order expressly prohibits counsel for DPRS (the Ellis County District Attorney) from using any of Relators' "past and future mental health records for any purpose other than this cause."

Ten days later, Relators filed a motion asking Respondent to reconsider and vacate the temporary orders. They argue that requiring them to submit to psychological evaluations, psychological counseling, and therapy "would compel them to abandon their privilege against self-incrimination." Relators also cite section 161.001(1)(O) of the Family Code, which provides that a parent's refusal to comply with temporary orders can be a ground for termination of the parent-child relationship. *See* Tex. Fam.Code Ann. § 161.001(1)(O) (Vernon Supp.2000). Because of this potential ground for termination, Relators argue that the temporary orders are improper because they require them "to either give up their privilege against self-incrimination or by declining to do so thereby creat[e] a ground for termination of their parental rights."

Respondent denied Relators' motion to vacate and reconsider the temporary orders on December 9, and this proceeding followed.

### APPLICABLE LAW

For mandamus relief, Relators must establish that: (1) Respondent committed a clear abuse of discretion; and (2) they have no adequate legal remedy. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding); *In re Ameri-*

*can Home Prods. Corp.*, 980 S.W.2d 506, 509 (Tex.App.—Waco 1998, orig. proceeding [mand. denied]). They must demonstrate "compelling circumstances" to obtain this "extraordinary" remedy. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (orig.proceeding). Mandamus will issue when other legal remedies cannot adequately protect their constitutional rights. *See id.* at 682.

### ASSERTION OF THE PRIVILEGE AGAINST SELF-INCRIMINATION

 A party may invoke his Fifth Amendment privilege against self-incrimination in a civil proceeding if he reasonably fears the answer(s) sought might incriminate him. *United States v. Balsys*, 524 U.S. 666, 118 S.Ct. 2218, 2222, 141 L.Ed.2d 575 (1998); *Texas Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex.1995). The state constitutional privilege likewise applies in civil proceedings. *Ex parte Butler*, 522 S.W.2d 196, 197–98 (Tex.1975) (orig.proceeding); *In re Speer*, 965 S.W.2d 41, 45 (Tex.App.—Fort Worth 1998, orig. proceeding).

 Blanket assertions of the federal or state privilege against self-incrimination are impermissible. *Speer*, 965 S.W.2d at 46; *Gebhardt v. Gallardo*, 891 S.W.2d 327, 330 (Tex.App.—San Antonio 1995, orig. proceeding); *Burton v. West*, 749 S.W.2d 505, 508 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding); *Sinclair v. Savings & Loan Comm'r*, 696 S.W.2d 142, 147 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (op. on reh'g); *accord Butler*, 522 S.W.2d at 197–98; *Meyer v. Tunks*, 360 S.W.2d 518, 523 (Tex.1962) (orig.proceeding). Rather, the privilege must be asserted on a question-by-question basis. *Sinclair*, 696 S.W.2d at 147; *accord. Butler*, 522 S.W.2d at 197–98; *Speer*, 965 S.W.2d at 46; *Gebhardt*, 891 S.W.2d at 330; *Burton*, 749 S.W.2d at 508.

 The privilege against self-incrimination does not permit a party or witness in a civil proceeding to wholly refuse to submit to a deposition or take the witness stand. *Butler*, 522 S.W.2d at 197; *Speer*, 965 S.W.2d at 45. In a similar fashion, the privilege does not permit a party in a suit affecting the parent-child relationship to wholly refuse to submit to a psychological evaluation like that ordered in this case. Upon submitting to such an evaluation however, a parent does not abandon his constitutional rights. *Butler*, 522 S.W.2d at 197–98; *Speer*, 965 S.W.2d at 45. "If an inquiry calls for an answer that might reasonably present a hazard of self-incrimination to the [parent], he may refuse to answer upon the ground of the privilege." *Butler*, 522 S.W.2d at 198; *accord Balsys*, 118 S.Ct. at 2222; *Denton*, 897 S.W.2d at 760.

The Supreme Court has established the following procedure for assertion of the privilege against self-incrimination:

When a witness refuses to answer upon [his federal or state privilege against self-incrimination], he is not the exclusive judge of his right to exercise the privilege. The judge is entitled to determine whether the refusal to answer appears to be based upon the good faith of the witness and is justifiable under all of the circumstances. The inquiry by the court is necessarily limited, because the witness need only show that an answer to the question is likely to be hazardous to him; the witness cannot be required to disclose the very information which the privilege protects. Before the judge may compel the witness to answer, he must be " 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency' to incriminate."

*Butler*, 522 S.W.2d at 198 (quoting *Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951)) (citations omitted); *accord Ex parte DeLeon*, 972 S.W.2d 23, 25 (Tex.1998) (per curiam).

■ If the trial court denies the witness's assertion of the privilege against self-incrimination in response to a specific inquiry, the witness may challenge that ruling in an original proceeding. *See De-Leon,* 972 S.W.2d at 25–26 (habeas); *Butler,* 522 S.W.2d at 199 (habeas); *Speer,* 965 S.W.2d at 47 (mandamus).

## CONSEQUENCES FLOWING FROM ADMISSION OF EVIDENCE COERCED IN VIOLATION OF THE PRIVILEGE AGAINST SELF-INCRIMINATION

■ Decisions of the United States Supreme Court reveal two related principles which arise under the Fifth Amendment[1] in cases such as this. First, the Fifth Amendment prohibits a state from obtaining an adverse judgment against a party to a civil proceeding solely because that party refuses to testify on the basis of the privilege against self-incrimination. *See Gardner v. Broderick,* 392 U.S. 273, 277–78, 88 S.Ct. 1913, 1915–16, 20 L.Ed.2d 1082 (1968); *accord Baxter v. Palmigiano,* 425 U.S. 308, 316–18, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976); *Lefkowitz v. Turley,* 414 U.S. 70, 80–81, 94 S.Ct. 316, 323–24, 38 L.Ed.2d 274 (1973).

■ However, a state may compel such a party to provide incriminating testimony in a civil proceeding if the state offers the party immunity from the use of the testimony in any subsequent criminal prosecution. *Baxter,* 425 U.S. at 316, 96 S.Ct. at 1557; *Lefkowitz,* 414 U.S. at 84–85, 94 S.Ct. at 325–26; *Gardner,* 392 U.S. at 278, 88 S.Ct. at 1916. If a party granted immunity in this circumstance persists in his refusal to testify, the Fifth Amendment no longer poses a bar to rendition of an adverse civil judgment premised on that refusal. *See Lefkowitz,* 414 U.S. at

84–85, 94 S.Ct. at 325–26; *Gardner,* 392 U.S. at 278, 88 S.Ct. at 1916.

The second principle found in the Supreme Court's decisions concerns a subsequent criminal prosecution. In *Garrity v. New Jersey,* the Supreme Court of New Jersey had directed the attorney general of that state to investigate allegations that certain police officers had engaged in the "fixing of traffic tickets." 385 U.S. 493, 494, 87 S.Ct. 616, 617, 17 L.Ed.2d 562 (1967). A deputy attorney general questioned the officers as a part of the investigation. Before questioning, he advised each officer that:

- his statements could be used against him in a criminal prosecution;
- he could refuse to answer any question the response to which would tend to incriminate him; and
- if he refused to answer any question, he could be terminated because of that refusal.

*Id.* The officers each answered the questions propounded to them after receiving these admonitions. *Id.* at 495, 87 S.Ct. at 617.

The State subsequently used the officers' statements (over objection) to obtain criminal convictions for obstruction of justice. *Id.* On review of these convictions, the Supreme Court held that the officers' statements were involuntary because the statements were coerced by virtue of the Hobson's choice presented to the officers in which they had to decide "between self-incrimination or job forfeiture." *Id.* at 496–98, 87 S.Ct. at 618–19. The Court concluded by holding that the federal constitution "prohibits [the] use in subsequent criminal proceedings of statements obtained under threat of removal from of-

---

1. These Supreme Court decisions focus solely on the Fifth Amendment privilege against self-incrimination. However, the state constitutional privilege against self-incrimination found in article I, section 10 of the Texas Constitution provides no broader protection than its federal counterpart. *Miffleton v. State,* 777 S.W.2d 76, 80 (Tex.Crim.App.

1989); *Woods v. State,* 970 S.W.2d 770, 776 (Tex.App.—Austin 1998, pet. ref'd); *Smith v. White,* 695 S.W.2d 295, 296 n. 1 (Tex.App.—Houston [1st Dist.] 1985, orig. proceeding); *accord Meyer v. Tunks,* 360 S.W.2d 518, 521 (Tex.1962) (orig.proceeding). Accordingly, the principles discussed hereinafter apply equally to the state constitutional privilege.

fice." *Id.* at 500, 87 S.Ct. at 620; *accord Lefkowitz,* 414 U.S. at 80, 94 S.Ct. at 323.

 The parent-child relationship is one of constitutional dimension. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985); *Spangler v. Texas Dep't of Protective & Regulatory Servs.,* 962 S.W.2d 253, 256 (Tex.App.—Waco 1998, no pet.). Because of the elevated status of this relationship, we conclude that the reasoning of *Garrity* would apply equally in a situation where a parent has been improperly required to forfeit either his privilege against self-incrimination or his parental rights.

## ANALYSIS

In a suit commenced by DPRS involving children suspected to be victims of abuse or neglect, the Family Code expressly permits a trial court to consider the results of psychological evaluations of the parents' and the parents' willingness to submit to counseling when deciding whether the parents are willing and able to provide the child with a safe environment. TEX. FAM. CODE ANN. § 263.307(b)(6), (10) (Vernon 1996). Respondent's temporary orders in this case were apparently entered to accomplish these purposes.

 Relators have wholly refused to submit to the psychological evaluations ordered because of a concern they might be asked a question which requires an incriminating answer. This is an impermissible blanket assertion of the privilege against self-incrimination. *See Butler,* 522 S.W.2d at 197–98; *Meyer,* 360 S.W.2d at 523; *Speer,* 965 S.W.2d at 46; *Gebhardt,* 891 S.W.2d at 330; *Burton,* 749 S.W.2d at 508; *Sinclair,* 696 S.W.2d at 147. Thus, they have failed to demonstrate the "compelling circumstances" necessary to obtain the "extraordinary" relief sought. *See Tilton,* 925 S.W.2d at 681.

In addition, the Supreme Court has clearly defined Relators' remedy. If the psychologist agreed to by the parties asks a question which either parent believes "calls for an answer that might reasonably present a hazard of self-incrimination to the [parent], he may refuse to answer upon the ground of the privilege." *Butler,* 522 S.W.2d at 198. Respondent must then determine whether that refusal is justified under the circumstances. *DeLeon,* 972 S.W.2d at 25; *Butler,* 522 S.W.2d at 198. Respondent must be "perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) cannot possibly have such tendency to incriminate" before he can compel either parent to answer. *Id.* If Respondent orders a parent to answer, the parent may challenge that directive in a habeas or mandamus proceeding (as warranted). *See DeLeon,* 972 S.W.2d at 25–26; *Butler,* 522 S.W.2d at 199; *Speer,* 965 S.W.2d at 47.

 The Hobson's choice which Relators argue they are being forced to make has not yet come into existence because Relators have failed to follow the *Butler* procedures by identifying any specific inquiries propounded by the psychologist which they believe would require an incriminating response. If the State does not offer immunity to Relators, and they properly refuse to answer specific questions which have some incriminating tendency, then the state and federal privileges against self-incrimination might preclude DPRS from obtaining termination of their parental rights solely because of their refusal. *See Baxter,* 425 U.S. at 316–18, 96 S.Ct. at 1557–58; *Lefkowitz,* 414 U.S. at 84–85, 94 S.Ct. at 325–26; *Gardner,* 392 U.S. at 278, 88 S.Ct. at 1916. This would be an issue appropriately decided on direct appeal following a trial on the merits.[2]

In a subsequent criminal prosecution, if:

2. We acknowledge that an appeal is frequently deemed an inadequate remedy in cases involving the parent-child relationship. *See, e.g., Proffer v. Yates,* 734 S.W.2d 671, 673

(Tex.1987) (orig. proceeding); *In re Bishop,* 8 S.W.3d 412, 415–16 (Tex.App.—Waco 1999, orig. proceeding [mand. denied] ). However, we do not believe a pre-trial mandamus pro-

- either parent had properly invoked the privilege against self-incrimination in the civil suit because the response sought would have some incriminating tendency;
- the State did not grant the parent immunity;
- the State informed the parent that it would seek termination of parental rights solely because of the refusal to answer the question(s) propounded; and
- the parent answered the question(s) to avoid the threatened consequence of termination;

then *Garrity* would conceivably bar the use of the testimony. *See Garrity*, 385 U.S. at 500, 87 S.Ct. at 620; *see also Lefkowitz*, 414 U.S. at 80, 94 S.Ct. at 323. This would be an issue appropriately decided on direct appeal following a conviction. *See, e.g. Garrity*, 385 U.S. at 500, 87 S.Ct. at 620; *Henderson v. State* 962 S.W.2d 544, 563 (Tex.Crim.App.1997); *Sendejo v. State*, 953 S.W.2d 443, 447 (Tex. App.—Waco 1997, pet. ref'd).

Relators claims hinge upon a significant number of eventualities which have not yet come to pass. Thus, Relators have failed to demonstrate that Respondent abused his discretion or that they have no adequate remedies. Accordingly, we deny their petition for mandamus relief.

Justice VANCE dissenting.

BILL VANCE Justice, dissenting.

By the addition of a single sentence to his "First Supplemental Temporary Orders" Respondent could have avoided a series of real and present conflicts. The majority holds that Respondent's failure to correct his order to account for those conflicts is not an abuse of discretion nor is it an error that can be remedied by mandamus. I dissent because I believe that Respondent should have modified his order to

ceeding is the appropriate vehicle to challenge the validity of asserted grounds for ter-

avoid those conflicts and that he can be directed to do so by mandamus.

Kim Verbois and Steve Riggins apparently face a real possibility of criminal charges arising out of the death of one of their twin daughters. Respondent himself asked, on the record, if each was "a target of a criminal investigation" and, after being told that they were by the attorney representing the Texas Department of Protective and Regulatory Services (DPRS), advised them of their *Miranda* rights prior to allowing the DPRS attorney to question them. Based on the evidence presented during the course of the mandatory fourteenth-day hearing, Respondent found that the cause of death of their daughter was blunt force injuries and "that the manner of death ... was homicide."

At the same time, Verbois and Riggins face the real possibility of losing custody of their other daughter. The child is currently under temporary managing conservatorship by DPRS. As part of the requirements to regain their child, Verbois and Riggins must comply with every reasonable and lawful order the trial court issues. TEX. FAM.CODE ANN. § 161.001(1)(O) (Vernon Supp.2000). The order at issue requires that they "submit to a psychological evaluation with a psychologist" and "submit to counseling if recommended by the psychologist in the psychological evaluation." Failure to comply with such an order can be used as evidence to support the termination of their parental rights to the child, a fact recognized by Respondent when he warned Verbois and Riggins that "if you fail to follow any court order in this family law case ... that noncompliance with the order ... can be used against you at any final hearing in this case before the judge or the jury involving the termination of your parental rights." *See id.* The DPRS has explicitly indicated that it would use their refusal to fully

mination.

comply with the order against them as suggested by Respondent's warning, observing that "[t]he [position] of the agency [is that] when a parent does not work on the service plan that is something that can be used at trial."

Respondent's order puts Verbois and Riggins in an untenable situation. On the one hand, they can fully comply with the order, thereby giving up the protection afforded them by the constitutional right to remain silent in the face of state-sponsored questioning if the answers to those questions may have a tendency to incriminate them. On the other hand, they could assert their state and federal constitutional rights, but run the risk of having that assertion used against them, not as an invocation of a constitutional right but as a failure to obey a court order, in a proceeding which may deprive them of their constitutionally protected relationship with their child.

There is yet another underlying conflict in this proceeding. The Ellis County Attorney is statutorily charged with the responsibility of representing the State in criminal cases and DPRS in proceedings arising under the Family Code. Tex.Code Crim. Proc. Ann. art. 2.02 (Vernon Supp. 2000); Tex. Fam.Code Ann. § 264.009. As the attorney for the DPRS, the County Attorney must "zealously pursue [the Department's] interest within the bounds of the law." Tex. Disciplinary R. Prof'l Conduct Preamble ¶ 3, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998). In this role, "the child's health and safety is the paramount concern." Tex. Fam.Code Ann. § 262.001(b). As the prosecuting attorney, though, the County Attorney's "primary duty [is] not to convict, but to see that justice is done." Tex. Code Crim. Proc. Ann. art. 2.01. On the one hand, the County Attorney is required to take advantage of the predicament that Verbois and Riggins face; on the other hand, the County Attorney is obligated to abide by the requirements of fair play inherent in seeking justice, including the

obligation to respect Verbois's and Riggins' assertion of the constitutional right to remain silent.

There is an option available, however, that would have resolved the conflicts faced by the parties, but it is an option that requires action by Respondent. Respondent could have specified that his order would not have the effect of trumping Verbois's and Riggins' constitutional right to remain silent. With the addition of a sentence in the order to the effect that Verbois and Riggins retain the right to refuse to answer the psychologist's questions based on their right to remain silent, Respondent would have eliminated any argument that the parents have refused to comply with an order of the court by the assertion of their right to remain silent. Verbois and Riggins could attend the evaluation sessions, asserting their right to remain silent only if and as necessary and still be in full compliance with Respondent's order. The County Attorney could continue to vigorously represent DPRS, but would not have to balance his obligation to the Department as a civil client against his prosecutorial duty to seek justice not convictions, in determining whether Verbois and Riggins refused to comply with a court order in the course of this proceeding. I believe that Respondent's failure to modify his order in such a way constitutes a clear abuse of his discretion.

A writ of mandamus will issue to correct a clear abuse of discretion by a trial court when the relator establishes "compelling circumstances." Tilton v. Marshall, 925 S.W.2d 672, 682 (Tex.1996). A court order that raises important issues related to constitutional protections which an appeal cannot adequately address is such a compelling circumstance. Id. I would find that the order at issue presents the compelling circumstance necessary to support a writ of mandamus.

I would hold that Respondent clearly abused his discretion when he failed to modify his order and that his error can be corrected through a writ of mandamus.

Because the majority does not, I respectfully dissent.