

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| IN RE: | § | |
| | | No. 08-19-00234-CV |
| RALPH NICHOL, JR., | § | |
| | | AN ORIGINAL PROCEEDING |
| Relator. | § | |
| | | IN MANDAMUS |
| | § | |
| | § | |

## O P I N I O N

Relator Ralph Nichol, Jr., has filed a petition for a writ of mandamus against the Honorable Angie Juarez Barill, Judge of the 346th District Court of El Paso County, Texas, challenging an order compelling him—over his assertion of the Fifth Amendment privilege against self-incrimination—to answer an interrogatory question posed to him in a civil case that arises out of the same set of facts as an ongoing criminal case in which Nichol is the defendant. We conditionally grant mandamus relief.

## BACKGROUND

This case involves parallel criminal and civil proceedings arising out of a car wreck involving relator Nichol and real parties in interest David Sepulveda, Mona Sepulveda,

Bernadette Sepulveda, and Noah Sepulveda (the Sepulvedas).

On September 24, 2017, Nichol was arrested by the El Paso Police Department for driving while intoxicated in connection with the collision that is the subject of the Sepulvedas' civil lawsuit. On March 22, 2018, Nichol was indicted on four charges of aggravated assault with a deadly weapon in connection with the collision. Nichol's criminal case was set for trial on December 14, 2018, then reset to May 3, 2019, then reset again. The mandamus record shows his criminal trial is now set to begin October 4, 2019.

Separately, the Sepulvedas filed a civil action against Nichol on December 6, 2018, alleging (1) negligence; (2) negligence per se based not only on statutory violations of the Transportation Code but also provisions of the Penal Code that criminalize driving while intoxicated, intoxication assault, and aggravated assault; (3) gross negligence; and (4) intoxication assault.[1] Simultaneously with their petition, the Sepulvedas served discovery on Nichol pertaining to the car collision, including requests for disclosure, requests for admissions, interrogatories, and requests for production. In responding to each discovery question or request, Nichol asserted his privilege against self-incrimination under the Fifth Amendment to the United States Constitution and refused to provide answers to any of the questions propounded by the Sepulvedas.

On April 3, 2019, Nichol filed an opposed motion to stay proceedings in the civil case pending resolution of the parallel criminal case. The trial court initially granted the stay on June 4, 2019. However, on July 16, 2019, the Sepulvedas filed a motion for reconsideration of the trial court's ruling on Nichol's motion to stay which included a request for a protective order to

---

[1] Pursuant to their claim of negligence per se, the Sepulvedas alleged that Nichol failed to exercise the mandatory standard of care in violation of the following statutory provisions: TEX. TRANSP. CODE ANN. §545.351 (Maximum Speed Requirement); and TEX. PENAL CODE ANN. §§ 49.04 (Driving While Intoxicated), 49.07 (Intoxication Assault), and 22.02 (Aggravated Assault).

2

preserve and protect certain documents, information, testimony, and/or material produced during the discovery phase of the proceeding. The Sepulvedas asserted they recognized the severity of the consequences of Nichol's criminal case and were willing to wait until it was resolved to complete discovery. The Sepulvedas sought a reconsideration of the court's stay of discovery, nonetheless, because of the extreme prejudice that resulted from the stay. The Sepulvedas asserted that they were prejudiced by the stay order because the statute of limitations for bringing claims related to the car collision was set to expire on September 24, 2019, and they believed there were more claims to be made against other parties.

The Sepulvedas explained that they "believe[d] that the defendant was drinking at a bar or establishment before the crash, entitling [The Sepulvedas] to bring a Dram Shop action against the owner of the bar who overserved and [sic] obviously intoxicated Defendant to the point that he was a danger to himself and others as evidenced by the crash caused by Defendant." Because of the stay, the Sepulvedas asserted they were being forced to forgo their additional action in violation of Article 1, Section 13 of the Texas Constitution. The Sepulvedas explained, "[t]he Plaintiffs in this case will have no forum, Court or remedy, should the Court decide to continue on with this Stay. Plaintiffs are entitled just as any other litigant to investigate all potential causes of action and bring them to Court." As an alternative to a stay, the Sepulvedas proposed a protective order which they attached to their motion for reconsideration. They asserted they "would be willing to wait until the criminal case is resolved if Plaintiffs have the ability to discover the location where the defendant was consuming alcohol and be allowed to amend their petition for these claims before the Statute of Limitations runs." The Sepulvedas proposed that the trial court issue a protective order on the civil case which would prohibit any information obtained or provided by either side from being released to any other parties outside the case,

3

including but not limited to the El Paso County District Attorney's Office. On September 9, 2019, Nichol's responded by asserting, among other arguments, that lifting the stay and utilizing the Sepulvedas' proposed solution of protecting discovery could not be practically executed without violating his Fifth Amendment privilege.

On September 11, 2019, the trial court granted, to a limited extent, the Sepulvedas' motion to reconsider the trial court's ruling on Nichol's motion to stay civil proceedings by lifting the stay on a single interrogatory propounded on Nichol. Central to this mandamus action, the trial court ordered Nichol to answer the following interrogatory:

[Interrogatories]

7. State where you had been just prior to the wreck, where you were going, and the purpose of the trip.

The trial court's order was formally signed on September 13, 2019. In pertinent part, the trial court's order provides as follows:

* * *

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the STAY OF PROCEEDINGS ordered on June 4th, 2019 IS LIFTED solely with regard to Plaintiffs' Interrogatory Number 7 that was propounded on the Defendant RALPH NICHOL, JR. on December 6th, 2018 along with the Plaintiff's Original Petition in this matter and accordingly due for response on or before January 25th, 2019.

AND IT IS FUTHER ORDERED that the said Defendant, RALPH NICHOL, JR., provide a full and complete answer to the aforementioned single interrogatory question – *Plaintiff's Interrogatory Number 7* – in writing and hand delivered before the close of business at 5:00 p.m. Mountain Standard Time on Monday, September 16th, 2019 to the Court for *in camera* review and appropriate safeguarding of the information provided pursuant to the *Protective Order* outlined below – including dissemination to *Plaintiff's Counsel* by having the said information read to counsel [NAME OMITTED] over the phone and subsequently sealed by the Court thereafter.

AND TO PRESERVE THE DEFENDANT'S RIGHTS UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION and it's [sic]

4

analogue in the Texas Constitution, the COURT HEREBY ORDERS, ADJUDGES and DECREES . . . that a *Protective Order* IS ENTERED with regard to the limited discovery answer and information to be provided by the Defendant in response to *Plaintiff's Interrogatory Number 7*.

ACCORDINGLY, IT IS ORDERED that the PARTIES, their ATTORNEY'S [sic] and AGENTS are HEREBY ENJOINED from disclosing the information disclosed pursuant to this order to any other person, party or entity – specifically including and [sic] all law enforcement personnel and/or members of the El Paso County District Attorney's Office or their agents, affiliates or representatives – except as is necessary to amend the Plaintiff's Pleadings and serve any additional parties that may need to be included in this lawsuit pursuant to the information provided by the said Defendant before the expiration of the *Statute of Limitations* in this matter – until the expiration of . . . five (5) business days after the resolution of the appurtenant criminal case and/or further orders of this Court; AND ADDTIONALLY ORDERED that the answer and information provided by the Defendant in response to *Plaintiffs' Interrogatory Number 7* SHALL BE SEALED after the *in camera* review and appropriate dissemination to the Plaintiffs' attorney of record referenced above until such time as any and all appurtenant criminal matters have been resolved for at least five (5) business days and/or further order of this Court.

This mandamus petition followed.[2]

## DISCUSSION

In his sole issue in this mandamus proceeding, Nichol contends that the trial court abused its discretion by ordering him to answer a discovery request in violation of his Fifth Amendment right against self-incrimination. Nichol further contends that the protective order aimed at balancing his right against self-incrimination against the Sepulvedas' right to discovery does not adequately shield any answer he gives from being used against him in a criminal proceeding. We agree.

---

[2] This Court issued an emergency temporary order on September 16, 2019, staying the discovery order pending a response from the real parties in interest. The real parties in interest did not challenge this Court's issuance of the emergency order, but instead filed a substantive response to the petition on the merits on September 18, 2019. Because this case is fully briefed on the merits, because we have a record before us sufficient to allow us to make a decision, because both sides agree that time is of the essence in this matter due to a potential impending statute of limitations issue, and because any delay in a decision from this Court would not further the interests of justice, the Court invokes Rule 2 of the Texas Rules of Appellate Procedure, suspends ordinary submission procedures and timelines, and allows for the expedited submission of this opinion and for issuance of this decision immediately following this panel's vote on the merits.

### *Mandamus Standard*

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court committed a clear abuse of discretion for which the relator has no adequate remedy at law. *In re Frank Kent Motor Co.*, 361 S.W.3d 628, 630 (Tex. 2012); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). An abuse of discretion occurs if a trial court fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 888 (Tex. 2010). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

Because this case involves an order compelling a discovery answer in a civil suit over the assertion of the Fifth Amendment privilege against self-incrimination while a parallel criminal suit remains pending, Nichol would have no adequate remedy by appeal if the trial court's decision compelling him to answer the question was erroneous. Prong two of the mandamus test is established. *See In re Verbois*, 10 S.W.3d 825, 829 (Tex. App.—Waco 2000, orig. proceeding)(trial court's denial of a witness' assertion of self-incrimination privilege in response to a discovery inquiry is reviewable on mandamus). As such, we turn to prong one and must determine whether the trial court's order is erroneous.

### *Assertion of Right Against Self-Incrimination in a Civil Case*

A party or witness may invoke his Fifth Amendment privilege against self-incrimination in a civil proceeding if he reasonably fears the answers sought might incriminate him in a criminal proceeding. *United States v. Balsys*, 524 U.S. 666, 671 (1998); *Texas Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex.1995).

The privilege does not permit a party or witness in a civil case to refuse to submit to a deposition or take the witness stand; rather, the witness must assert the privilege on a question-

by-question basis. *In re Verbois*, 10 S.W.3d at 828. At that point, the trial judge must make a ruling as to whether the assertion of privilege is proper. *Id*. The Texas Supreme Court has set out the following standard for judges to use in determining issues of privilege under the Fifth Amendment:

> The judge is entitled to determine whether the refusal to answer appears to be based upon the good faith of the witness and is justifiable under all of the circumstances. The inquiry by the court is necessarily limited, because the witness need only show that an answer to the question is likely to be hazardous to him; the witness cannot be required to disclose the very information which the privilege protects. Before the judge may compel the witness to answer, he must be perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) cannot possibly have such tendency to incriminate.

*Ex parte Butler*, 522 S.W.2d 196, 198 (Tex. 1975) (internal citations omitted).

"Each question for which the privilege is claimed must be studied, and the court must forecast whether an answer to the question could tend to incriminate the witness in a crime." *In re Charles*, No. 01-18-01112-CV, 2019 WL 2621749, at *3 (Tex. App.—Houston [1st Dist.] June 27, 2019, orig. proceeding)(mem. op.). "The privilege extends not only to answers that would in themselves support a conviction, but embraces answers that would furnish a link in the chain of evidence needed to prosecute the claimant." *Id*. "Upon a party's assertion of the Fifth Amendment privilege to a discovery request in a civil suit, the trial court reviews the discovery request, applies the law of privilege, discovery, and protection to the request, and determines how best to protect the privilege, the right to proceed with the case, and the right to defend the suit." *In re Ferguson*, 445 S.W.3d 270, 275 (Tex.App.—Houston [1st Dist.] 2013, orig. proceeding).

Because the trial court, in balancing Nichol's Fifth Amendment rights against the Sepulvedas' right to discovery, issued an order that compelled him to provide an answer but

7

promised to keep that answer under seal from the District Attorney's Office, we must resolve two questions on mandamus review: first, did Interrogatory 7 call for an answer that could tend to incriminate Nichol in his parallel criminal proceeding in violation of his privilege against self-incrimination? Second, would the trial court's protective order adequately shield Nichol's Fifth Amendment privilege from any law enforcement personnel who may pursue evidence in his criminal case?[3]

*Incrimination*

One of our sister courts in Houston recently decided a mandamus action under remarkably similar circumstances. In *Charles*, a defendant was sued in a civil action arising from a motor vehicle crash that killed a man. *In re Charles*, 2019 WL 2621749, at *1. Separately, the State of Texas indicted the same defendant for intoxication manslaughter in criminal proceedings. *Id.* In the civil case, the plaintiffs propounded two pertinent requests for discovery:

- An interrogatory that stated: "Identify by name, address and phone number each person, business or location you were sold, served, provided or consumed any alcoholic beverages within 24 hours of the motor vehicle collision in question. Include in your answer when you were served, sold or provided such alcoholic beverages and what kind, type, and quantity of alcoholic beverage(s) did you consume."

- A request for protection that stated: "Please provide a copy of the billing records or other documents for any cellular telephone, mobile device, or other electronic device Defendant was using, or was available for Defendant's use,

---

[3] Because of the compressed timeline involved in this decision, we proceed without the benefit of a transcript of the hearing at which the trial court made its decision. However, we note that the Texas Supreme Court has held that "a reporter's record is required [in appellate proceedings] only if evidence is introduced in open court [at the trial level]; for nonevidentiary hearings, it is superfluous." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005). "If all the evidence is filed with the clerk and only arguments by counsel are presented in open court," the appellate proceeding "should be decided on the clerk's record alone." *Id.* We presume pretrial hearings are nonevidentiary absent a specific indication or assertion to the contrary. *Id.* Although we are sitting on mandamus review rather than on direct appeal, and although the record comes to us in the form of a mandamus record rather than a clerk's record, the same principles apply. Here, it appears that beyond the arguments asserted, the real parties in interest have not contended that a transcript of the hearing is necessary to decide the merits of this mandamus proceeding based on critical testimonial evidence. Because of this, and because determining whether Interrogatory 7 calls for a potentially incriminatory answer given the existence of parallel criminal proceedings can be determined based solely on the pleadings contained in the mandamus record, we determine that review of the transcript of the nonevidentiary hearing would not materially aid this Court in reviewing this discovery order.

on the day of the incident forming the basis of this lawsuit, to include any placed or received cellular telephone calls, emails, text messages, or multimedia message using a mobile phone or other electronic device on the day of the incident from the basis of this lawsuit."

*Id*. at *1.

In response, the defendant asserted his Fifth Amendment privilege and refused to answer the two discovery requests. The plaintiffs asserted that they needed an answer to these questions because they were considering bringing a Dram Shop action against the bar that allegedly overserved him and the statute of limitations for bringing such an action was about to expire. *Id*. at *1-*2. Over the defendant's objection, the trial court ordered him to answer the two interrogatories, stating that "[t]he defendant's presence in a public space over the 24 hours prior to the accident is not privileged." *Id*. at *2.

The Fourteenth Court of Appeals conditionally granted mandamus relief. The Court noted that Charles was already under indictment for involuntary manslaughter, meaning that his fear of incrimination was not remote or speculative. *Id*. at *3. With respect to the interrogatory requiring Charles to name the entities that served him alcohol and state his whereabouts on the night of the crash, the Court found that the question called for an incriminating answer because the facts were the same as those underlying the criminal indictment. *Id*. Likewise, the request for production was so broad as to likely ensnare indirect evidence that could provide incriminating "links" to law enforcement. *Id*. Under the circumstances, the Court concluded that Charles' invocation of the Fifth Amendment privilege was reasonable and that the Court could not say that the answers to the questions "cannot possibly have such tendency to incriminate." *Id*.

The Sepulvedas argue that this case is distinguishable from *Charles* because the question they propounded was more generalized than the detailed, multi-part question propounded in *Charles*. They assert that Nichol failed to produce an adequate explanation regarding the

9

incriminatory impact of answering the discovery question at issue, and thus, failed to produce a record of any such reason that would be sufficient to support an abuse of discretion in a mandamus proceeding. They also state that Nichol should be compelled to respond because any threat of prosecution related to alcohol-related admissions has been essentially mooted by the prosecutor's dismissal of the DWI charge in favor of the aggravated assault with a deadly weapon charge.

We deal with the mootness assertion first. The record presented does not show that the dismissal of the DWI charge was done with prejudice, meaning that the State could potentially re-indict him on the DWI charge based on an admission Nichol makes in a civil case. But more to the point, it is undisputed that Nichol is currently facing four aggravated assault with a deadly weapon charges, meaning that an admission that he was at a bar (alcohol abuse being a potential aggravating factor) and then drove home or to another location immediately before the crash (thereby employing a vehicle, a potential deadly weapon) could be used to incriminate him further and bolster the State's case. To determine whether an automobile was used as a deadly weapon, courts (1) evaluate the manner in which the defendant used the automobile (i.e. whether the driving was reckless or dangerous) and (2) consider whether the automobile was capable of causing death or serious bodily injury. *Brown v. State*, No. 10-09-00110-CR, 2010 WL 376953, at *2 (Tex.App.—Waco Feb. 3, 2010, pet. ref'd)(mem. op., not designated for publication). Since a car is capable of causing death or serious bodily injury, courts tend to focus on factor one. In evaluating whether a person was driving recklessly or dangerously for purposes of finding a car to be a deadly weapon, intoxication may show evidence of recklessness sufficient to turn a car (which is not ordinarily a deadly weapon) into a deadly weapon. *Id*. Under these circumstances, as in *Charles*, the pending indictment against Nichol makes his assertion of his Fifth Amendment

10

right against self-incrimination appear to be based upon good faith, and is therefore justifiable. *See In re Charles*, 2019 WL 2621749, at *3 (citing *Ex Parte Butler*, 522 S.W.2d 196, 198 (Tex. 1975)).

As for the tendency to incriminate element, we hold that the scope of the question asking Nichol about his whereabouts immediately prior to the crash, his destination, and the purpose of his trip, when viewed in the context of the criminal charges Nichol faces in parallel proceedings, would in fact create the hazard of Nichol incriminating himself either directly or indirectly by providing an inferential link that law enforcement could use to support the criminal charges currently pending or others that could still be brought. As such, Nichol had the right to assert his Fifth Amendment privilege against answering the question and his privilege extended not only to answers that would in themselves support a conviction, but embraces answers that would furnish a link in the chain of evidence needed to prosecute his criminal case. *See Charles*, 2019 WL 2621749, at *3 (citing *Maness v. Meyers*, 419 U.S. 449, 461 (1975)).

*Civil Protective Order*

The fact that the discovery question calls for a potentially incriminating answer does not end our analysis. Although the Fifth Amendment privilege is weighty, it is not necessarily absolute. As we stated previously, the trial court still retains some leeway to determine how best to balance the competing interests of defendant's privilege, the plaintiffs' right to proceed with their case and their right to investigate potential claims, along with the right of defendant to defend the suit.

The Sepulvedas maintain that even if the question called for Nichol to incriminate himself, the trial court's protective order placing any answer Nichol gave under seal would adequately protect his right against self-incrimination by explicitly withholding it from the

11

District Attorney's Office. While we commend the trial court for trying to strike a balance between the plaintiffs' right to discovery and the defendant's privilege against self-incrimination, all while the fuse burns on an upcoming statute of limitations, we disagree that the civil protective order would provide Nichol with adequate protection against self-incrimination under the circumstances.

Nichol cites numerous federal court decisions holding that grand juries can use criminal subpoenas to obtain information subject to a civil protective order, meaning that in actuality the protective order could provide him no protection at all with respect to the parallel criminal proceedings. *See*, *e.g.*, *In re Grand Jury*, 286 F.3d 153, 158 (3d Cir. 2002) (siding with a First Circuit case holding that a grand jury subpoena overrides a protective order unless exceptional circumstances exist that clearly favor subordinating the subpoena to the protective order; noting that three circuits have adopted a "per se rule that a grand jury subpoena always trumps a protective order" while the Second Circuit has held that a protective order takes priority over a grand jury subpoena unless there is a showing of improvidence in the protective order grant or there are extraordinary circumstances that justify turning over information subject to a civil protective order).

We agree that while a civil protective order may restrict public access to certain information, the trial court's civil protective order likely would not place Nichol's potentially incriminatory answer completely beyond the reach of a grand jury criminal subpoena. That means that even with a civil protective order in place, the potentially incriminatory material could still end up being used against him in the parallel criminal proceedings.[4]

---

[4] Nichol also asserts that even if the civil protective order prevented the District Attorney's Office from knowing the incriminatory details of his answer, an eagle-eyed prosecutor could use the Sepulvedas' amendment of their lawsuit naming a bar that Nichol could potentially identify as a defendant as another incriminatory "link" to build a case against Nichol. We need not decide that specific question because we do not believe that a civil protective

Case law establishes that the Fifth Amendment allows for a civil deponent to be forced to testify only when the prosecuting agency grants that witness immunity. *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 256-257 & n. 13 (1983) (holding that "District Courts are without power to compel a civil deponent to testify over a valid assertion of his Fifth Amendment right, absent a separate grant of immunity"). Although the trial court's issuance of a civil protective order represented a valiant attempt at serving both parties' interest, the trial court could not grant a protective order that would be co-extensive with a grant of immunity from the State. Because the civil protective order is not the functional equivalent of a grant of immunity from prosecution, the trial court could not direct Nichol to provide a potentially incriminatory answer to Interrogatory 7 while he still faced the prospect of criminal liability.

## CONCLUSION

Having concluded that the trial court's order compelling Nichol to provide an answer to Interrogatory 7 over his assertion of his Fifth Amendment privilege against self-incrimination was an abuse of discretion, we conditionally grant the writ of mandamus. We order the trial court to vacate the order of September 13, 2019 which compels Nichol to respond to the discovery question at issue in this opinion. The writ of mandamus will not issue unless Respondent fails to comply with this opinion within a reasonable period of time.

GINA M. PALAFOX, Justice

September 20, 2019

Before Palafox, J., Barajas, C.J. (Senior Judge), and Larsen, J. (Senior Judge)
Barajas, C.J. (Senior Judge), sitting by assignment
Larsen, J. (Senior Judge), sitting by assignment

---

order provides the same protections that a grant of immunity would be enough to allow compelled testimony.